THOMAS L. BOWEN, plaintiff in error, *vs.* W. H. WAKE-FIELD & Co., defendants in error.

W. & Co. addressed to their agent at Apalachicola an *order, to* this effect: "You will please ship per Captian Bowen's barge, as follows of our goods, &c.:

Mr. Bowen promises to take the goods at 150 per cent. on printed rates."

Across the face of the above order is written; "These goods to be shipped provided Captain Bowen can make arrangements to get his barge towed up to Chattahoochee, or the goods shipped up there by a steamboat;"

*Held*, that this paper was void as a contract for want of mutuality of obligation.

Assumpsit in Clay Superior Court. Tried before Judge KIDDOO, March Term, 1857.

This was an action by Thomas L. Bowen against W. H. Wakefield & Co., for the recovery of $408 20, claimed to be due and owing by defendants, on a special contract for freights.

The declaration alleged that plaintiff, being the owner and master of a barge running the Chattahoochee river, agreed with defendants to transport for them, from Apalachicola, Florida, to Fort Gains, in Georgia, a lot of goods, wares and merchandize, they agreeing to pay him 150 per cent. on or above steamboat rates; that, in pursuance of said contract,

defendants gave him orders upon their agents in Apalachicola for said goods, and he proceeded, then, down the river with his barge, and applied to, and demanded of said agents the goods specified in said orders, which they refused to deliver; that defendants had, in the meantime, countermanded their orders given to him, and said agents shipped said goods per a steamboat; that the freight on said goods, as per the contract with defendants, would have amounted to the sum of $408 20, which plaintiff claims he is entitled to, having performed, as far as he could, all his part of said agreement, and was put to great trouble and expense in the premises.

The defendants pleaded the general issue.

Upon the trial, on the appeal, plaintiff offered in evidence the following orders from defendants to their agents in Apalachicola, to-wit:

H. B. TAYLOR, ESQ., *Dear Sir:*—You will please ship per Captain Bowen's barge as follows of our goods, say 35 coils of rope, 1 tierce rice, 1 barrel of flour, 10 kegs lard, 4 barrels whisky, 1 hhd. sugar, 8 or 10 boxes tobacco, (if arrived,) any trunks or boxes of merchandize, should there be any, 10 or 12 boxes liquors, if arrived, all the cheese, potatoes, onions and mackerel, one bll. containing keg of butter.

Mr. Bowen promises to take the goods at 150 per cent. on printed rates.

Yours, respectfully,<br>W. H. WAKEFIELD & CO.

Across the face of the above order is written: "These goods to be shipped provided Capt. Bowen can make arrangements to get his barge towed up to Chattahoochee, or the goods shipped up there by a steamboat.

W. H. W. & CO."

MESSRS. WM. G. PORTER & Co.:—You will please ship, per Capt. Bowen's barge, the 10 bales of bagging we pur-

chased of your Wm. G. Porter, in New York, and also the 5 bales for Tuttle & Wakefield, Franklin, Ala.

W. H. WAKEFIELD & CO.

Fort Gaines, Nov. 5th, 1855.

Across the face of this order was written: "In case Capt. Bowen cannot get his barge towed up to Chattahoochee, or the goods shipped up there by boat, you will not ship by him, but by the Steamer Union, or any other opportunity that offers.      W. H. W. & CO."

Plaintiff insisted that those orders contained the *written contract* of the parties. The Court held that they could go as evidence of the amount of goods ordered by defendants, and as an admission against them, but not as the only evidence of the contract, but that parol testimony of the same or antecedent date, was admissible, to alter or disprove the same, to which ruling plaintiff excepted.

Plaintiff next offered a freight bill, paid by defendants to the steamboat Ben Franklin, for goods shipped by her, to show the amount which he would have been entitled to under the order, if he had brought said freights.

Plaintiff then proved that he went with his barge down to Apalachicola; presented the orders for the goods to the parties to whom they were directed; demanded the goods; that they refused to deliver them; and that he had employed the Steamer Ben Franklin to tow his barge up the river.

Defendants read the deposition of James B. Taylor, taken by commission, who deposed in substance, that plaintiff did present an order from defendants for the goods; they were not delivered to him, because of the previous arrival of a steamboat bringing news of a rise in the river, and an opportunity then being had to ship the goods by steamboat, and at the usual, or what is termed, printed rates; that the goods were shipped on steamer Ben Franklin; that plaintiff suggested the shipment of the goods by this steamer, and

did not expect, after he became aware of the rise in the river, to get the goods; that he had received from defendants, previous to the presentation of the order, a letter informing him that they had given Capt. Bowen an order for some of their goods, but if he could not get his barge towed to Chattahoochee, or the goods shipped on a steamboat up to that place, not to ship by him; that the goods in his possession were an assortment of merchandise, amounting in quantity to about 400 barrels, and the freight to Fort Gaines, by steamboat, fifty cents per barrel; and that plaintiff remarked, after he could not get the goods, that somebody would have to pay him for his trouble and expenses in coming down with his barge.

*John G. Ruan* deposed that he had in his possession, in the fall of 1855, ten bales of bagging, which he shipped by steamer Ben Franklin, at $2 50 per bale; that he in all cases obeys orders from the owners of goods, when he can do it, and knows nothing that would benefit either plaintiff or defendant.

*James R. Morris* deposed, that in a conversation he had with plaintiff, just on his arrival after his first trip from Apalachicola, he stated that he was going back, as he could not get cotton enough to pay him very well, and he was going to try and get orders from defendants and other firms in Fort Gaines, for their goods; he said if the river should rise before he came up, he could dispose of his box; in another conversation he said, he should make the trip and take the chances about goods up the river, and that if the river should rise while he was down he would not care about bringing his box back.

*James R. Murray* testified that he was present at the time plaintiff came to see if defendants would give him an order for their goods; witness rather insisted on defendants to give him the order, and defendants agreed to do so, and about the time, and while the order was being written, witness asked plaintiff what he would do in case the river rose before his return, so that steamboats could run, and plaintiff replied that

if the river rose he would leave his barge at the bay; that it would cost him more to have it towed up than the freights would be worth to him, and that in that event he should expect the goods to be brought up on a steamboat.

Defendants closed, and the Court charged the jury, that the orders of defendants above referred to, did not constitute a written contract; that they contained no mutuality of obligation; that under them, plaintiff could not have been held liable for any failure on his part, and consequently, the same lacked one of the material elements of a written contract, to-wit: mutuality of obligation. The Court also charged, that if they believed, from the evidence, that the defendants had contracted with plaintiff to bring their goods at specified prices, and the plaintiff had gone forward in the discharge of said contract, until prevented by defendants, that he was as much entitled to the amount of freight on the goods, as if he had actually brought them. But if they believed there were conditions in the contract with which plaintiff, on his part, failed to comply, then he was not entitled to recover. That whether plaintiff went on his own business, or at the instance of defendants alone, mattered not, that he was equally entitled, under the contract, even if he went on his own business.

The jury found for defendants. Whereupon plaintiff's counsel excepts, and alleges for error:

1st. That the Court erred in deciding that the orders read in evidence did not constitute a written contract, and permitting the same to be altered and disproved by parol testimony.

2d. That the Court erred in not allowing said orders to go to the jury as evidence of the contract, (the same having been received by the plaintiff unsealed and open.)

3d. That the finding of the jury is contrary to law and evidence and the charge of the Court.

BRINDLEY, HOOD, DOUGLASS & DOUGLASS, for plaintiff in error.

PERKINS, represented by JONES, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

We think the Court was right in deciding that the paper delivered by the defendants to the plaintiff, was nôt a contract, for want of mutuality of obligation, as well as for other reasons. And there is abundant evidence to support the verdict.

Judgment affirmed